Harold J. BROWN, Plaintiff,

v.

STATE OF OREGON, DEPARTMENT OF CORRECTIONS; and George H. Baldwin, Jr., Superintendent of the Eastern Oregon Correctional Institution, Defendants.

Civil No. 95–106–FR.

United States District Court,
D. Oregon.

July 8, 1997.

Loren W. Collins, Enfield Brown Collins & Knivila, Salem, OR, for Plaintiff.

Hardy Myers, Attorney General, William C. Tharp, Assistant Attorney General, Salem, OR, for Defendants.

## OPINION AND ORDER

FRYE, District Judge.

The plaintiff, Harold J. Brown, brings this action against his employer, the State of Oregon, Department of Corrections, and George H. Baldwin, Jr., Superintendent of the Eastern Oregon Correctional Institution (EOCI), alleging racial discrimination in failing to promote him from correctional officer to sergeant and in creating and acquiescing in a hostile work environment. Before the court is the defendants' motion for order to change location of trial (# 67).

## CONTENTIONS OF THE PARTIES

The defendants contend that the trial should be transferred from Portland, Oregon to Pendleton, Oregon because all of the potential fact witnesses, including the plaintiff, live in or around the City of Pendleton; that travel to Portland will inconvenience the witnesses and will increase the costs to the State of Oregon; and that to require the fact witnesses, most of whom work at EOCI, to travel to Portland will disrupt the operation of the correctional facility and risk public safety.

Brown contends that the motion of the defendants is untimely, and that the local rule and the statute cited by the defendants do not provide for a trial in Pendleton. Brown further contends that his choice for the place of trial should be honored, and that it would be more convenient for his three expert witnesses to testify in Portland. Citing the *Report of the Oregon Supreme Court Task Force on Racial/Ethnic Issues in the Judicial System* (1994) (hereinafter the Report on Racial/Ethnic Issues), Brown contends that a race discrimination action such as this one should be tried in a geographic location in which it is more likely to seat a jury with members from the relevant minority community.

## LEGAL STANDARDS

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Local Rule 105–1 states that "[t]he court will be in continuous session in Portland, Eugene, and Medford. Sessions may from time to time be held in Coquille, Klamath Falls, Pendleton, or any other place in the district as directed by the court."

Local Rule 105–2(c) and (d) states:

(c) The court may order, upon its own motion or upon the motion of any party, in the interest of justice or for the convenience of the parties and witnesses, that an action or proceeding and the file be transferred from the city in which it was commenced to Eugene, Medford or Portland.

(d) Unless otherwise directed by the court, actions will usually be tried in the city in which the files are maintained. The court in its discretion may order any action be tried at any other place in the district.

Nevertheless, on motion of any party, served and filed not later than the filing of an answer, actions arising in the counties designated below will be tried as shown: ...

## ANALYSIS AND RULING

Brown contends that (1) the motion to transfer is untimely under Local Rule 105–2(d) because the defendants have already filed their answer; and (2) a transfer to

Pendleton cannot be ordered under 28 U.S.C. § 1404(a) because Brown could not have filed the complaint, or brought the action, in Pendleton.

The court has the inherent discretion to transfer the trial on its own motion from Portland to Pendleton. *See* Local Rule 105–1 and 105–2(d) (first paragraph). Judges in this district hold trial in Pendleton when it is more convenient for the parties and witnesses. Thus, the court will consider the motion to transfer according to the case law governing 28 U.S.C. § 1404(a).

■ A court must consider several factors when analyzing a motion to transfer venue: (1) the relative convenience of the selected and proposed forums; (2) the possible hardship to the plaintiff if the court transfers the action; (3) the interest of justice; and (4) the deference accorded to the plaintiff's choice of forum. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir.1997). In enacting section 1404(a), Congress intended to permit the courts to grant motions to transfer with a lesser showing than required to transfer under the doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546–47, 99 L.Ed. 789 (1955).

■ The court discounts the parties' claims that certain records are located at EOCI in Pendleton and other documents are located at the Department of Corrections in Salem, Oregon. If the case is properly prepared, there should be little need to search for additional documents after trial begins. Wherever the records are now located, they can be readily obtained for trial in either forum.

In this action, Brown alleges that he suffered race discrimination when he was employed at the EOCI in Pendleton. Brown resides in the Pendleton area. The defendants have listed thirty-eight potential witnesses, including Brown, who reside in the Pendleton area. Neither party has named a fact witness who resides in the Portland area. It would be more convenient for all of the fact witnesses, including Brown, for this case to be tried in Pendleton.

Brown notes that he has retained three expert witnesses that he expects to call at trial. Two live in Salem, Oregon, and one lives in Ashland, Oregon. The expert witness from Ashland must travel to testify and to spend the night no matter where the forum. The difference in travel expenses between Ashland and Pendleton and Ashland and Portland should not be significant to the witness from Ashland. The two witnesses from Salem could drive to Portland for their testimony and return to Salem at night. Although a transfer to Pendleton will increase their inconvenience and their expenses, these factors can be minimized by the careful scheduling of their testimony. They would not be required to stay for the entire trial. In any case, a court is more concerned about the convenience of the fact witnesses than about the convenience of paid experts. *See In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n. 6 (4th Cir.1984).

The defendants also contend that to keep the trial in Portland will cause a major disruption in the functioning of the EOCI, and public safety could be an issue. Thirty-one of the potential fact witnesses are employed at the EOCI. Defendant George Baldwin, the Superintendent of the EOCI, testified that the EOCI, as a correctional facility, must be staffed twenty-four hours a day, and that to schedule absences of unknown duration for this many employees will be extremely difficult, particularly in light of a mandated employee in-service training program currently underway, scheduled vacations, and unscheduled absences due to illnesses. Baldwin contends that an emergency, such as a prison riot, fire, or natural disaster, would be especially dangerous if this many employees are away from the prison. Baldwin notes that the prison, and thus the State of Oregon, will have to pay significant overtime wages to the employees who travel to Portland to testify and to those employees who work extra shifts to permit the employees to travel to Portland to testify.

The court agrees that the EOCI is not a typical business. The absence of a large number of employees from a state correctional facility is a serious matter and must be minimized.

Brown's main contention is that he alleges race discrimination, and the chances of se-

lecting any minority jurors in Pendleton, Oregon are minimal. According to Brown's calculations, which are based on data contained in the Report on Racial/Ethnic Issues, the counties which form the jury division for Pendleton, Oregon have a combined black population of 0.3%, while the counties which form the jury division for Portland, Oregon have a combined black population of 2.7%. Brown contends that in the interest of justice, he should be allowed to increase his chances of having his race discrimination claims heard by a broadly representative jury.

Although there is a slightly larger percentage of black people in the Portland jury pool than in the Pendleton jury pool, the number in both is very small, and Brown's chances of having black jurors on any jury is limited in both locations. More importantly, many juries with no minority members have rendered verdicts in race discrimination trials without being accused of bias. Counsel for Brown will be able to inquire into the biases and prejudices of potential jurors during the voir dire examination.

Brown does not claim any particular hardship if the trial is held in Pendleton except for the additional travel by the expert witnesses, discussed above.

The court always gives deference to a plaintiff's choice of forum when analyzing a motion to transfer; here, however, all alleged wrongful conduct occurred in Pendleton; all fact witnesses reside in Pendleton; and to require the witnesses to travel to Portland could jeopardize the safety of the prison and the community because of staffing shortages at the EOCI. The court concludes that the balance of factors weighs in favor of moving the trial to Pendleton.

## CONCLUSION

IT IS HEREBY ORDERED that the defendants' motion for order to change location of trial (# 67) is GRANTED.